## GILLEN v. CITY OF NEW YORK.

(District Court, S. D. New York. May 1, 1912.)

COLLISION (§ 95*)—STEAM VESSELS MEETING IN FOG—MUTUAL FAULT.

A collision in the early morning, in a fog, between a tug with a barge in tow, passing down Red Hook channel, and a ferryboat, passing up, *held* due to the fault of both; the tug being in fault for being on the eastern or Long Island side of the channel, and the ferryboat for going too fast in the fog, and for not stopping when she heard the signal from the tug forward of her beam, as required by Article 16 of the Inland Rules (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2880]).

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

In Admiralty. Suit for collision by Henry Gillen, owner of the steam tug Henry Gillen, against the City of New York, owner of the ferryboat Bay Ridge. Decree for libelant for half damages.

Foley & Martin, of New York City, for libelant.
A. R. Watson, of New York City, for respondent.

WARD, Circuit Judge. February 6, 1908, at about 7:40 a. m., the tug Henry Gillen, with the barge Harold astern on a hawser five or six fathoms long, came into collision with the ferryboat Bay Ridge in the Red Hook channel; the ferryboat going between the tug and tow, parting the hawser, and doing considerable damage.

The story of the tug is that she was going down the starboard side of Red Hook channel, and, seeing the ferryboat coming up on the port side 400 or 500 feet off, blew a signal of one whistle. Although the vessels were then on clearing courses, the ferryboat blew an alarm, starboarded, and came right across the channel for the

tug and tow, whereupon the tug hooked up full speed, but was unable to clear the ferryboat. The witnesses for the tug admit that she was blowing fog signals, but say that it was possible to see a distance of 700 or 800 feet.

The ferryboat's witnesses say that she left her slip at Thirty-Ninth street, South Brooklyn, at 7:30 a. m., and held her usual course, due northwest, 1½ minutes, to get clear of the flats and the sea fence at Erie Basin, and then ported on a course due north, which brings her up the starboard side of Red Hook channel, and slowed; that the fog was dense, so that it was not possible to see more than 75 to 100 feet. The pilot of the ferryboat heard one blast of a whistle a little on her starboard bow, and then another, when he stopped, blew an alarm, and reversed. The tug Gillen loomed up about ahead on a course crossing the ferryboat's bows about southwest. Immediately afterwards the Harold was seen, and the collision occurred in the way I have stated.

The main contention between the parties is as to the thickness of the fog and whether the place of collision was on the eastern side of Red Hook channel, as the witnesses from the ferryboat say, or on the western side, as the witnesses from the tug say. I do not believe the account given by the witnesses for the tug. It is incredible that, if the tug and the ferryboat were on clearing courses and visible 700 or 800 feet off, the ferryboat would have left her regular course and deliberately steered over, so as to run between the tug and her tow. I believe that the fog was as thick as the witnesses from the ferryboat say, and that the tug was feeling her way down on the wrong side of the channel along the Brooklyn shore. The vessels did not discover each other until the danger of collision was imminent. Then the tug made an ineffectual attempt, by hooking up, to get across the ferryboat's bows. The captain of the Gillen threw his wheel over to port, hooked up his engines, blew an alarm, and left the pilot house through the window, and told a passenger who was with him to go out of the door immediately before the collision. No better proof of the emergency could be given.

But I think the ferryboat is also to blame, because she was going too fast in the fog. The damages inflicted show this, and the failure to examine the engineer as a witness is highly corroborative of it. She was also at fault for not stopping her engines when she heard the first signal forward of her beam, as required by article 16 of the Inland Rules.

The libelant may have a decree for half damages.